Zachary Nightingale (California Bar #184501)
Marc Van Der Hout (California Bar # # 80778)
Avantika Shastri (California Bar #233453)
Van Der Hout, Brigagliano & Nightingale, LLP
180 Sutter Street, Fifth Floor
San Francisco, California 94104
Telephone: (415) 981-3000
Facsimile: (415) 981-3003
Email: ndca@vblaw.com

Attorneys for Petitioner
Mohammed SHAMIM

**ORIGINAL FILED**

AUG 21 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SI

Mohammed SHAMIM

Petitioner,

v.

Michael CHERTOFF, in his Official Capacity, Secretary, Department of Homeland Security; Alberto GONZALES, in his Official Capacity, Attorney General, Department of Justice; Julie MYERS, in her official capacity, Assistant Secretary, Immigration and Customs Enforcement, Department of Homeland Security; Nancy ALCANTAR, in her official Capacity, Field Office Director, San Francisco, California, U.S. Bureau of Immigration and Customs Enforcement; and Earl BARNES, in his Official Capacity, Facility Manager, Lerdo Pre-Trial Facility,

Respondents.

Case No. C 07 4308

PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*IMMIGRATION CASE*

DHS No. A 37-046-017

Petition for the Writ of Habeas Corpus                                                       No: _____

**INTRODUCTION**

1. Petitioner Mohammed SHAMIM ("Petitioner"), by and through his undersigned counsel, hereby petitions this Court for a writ of habeas corpus to remedy his indefinite detention in immigration custody by Respondents.

2. Petitioner was taken into custody on October 17, 2006, received a final order of removal on October 19, 2006, and has been detained by Respondents since that date, allegedly under 8 U.S.C. § 1226 and 8 U.S.C. § 1231(a)(6).

3. On or about April 20, 2007, the DHS performed a review of Petitioner's detention shortly before Petitioner's six-month anniversary of immigration detention. The DHS then issued a decision in which it refused to release Petitioner on the grounds that he had a pending appeal and stay of removal at the Ninth Circuit, and stated that it would not conduct another review of his detention status for another year.

4. Petitioner's detention has now exceeded the six month period that was established by the United States Supreme Court in Zadvydas v. Davis, 533 U.S. 678, 701 (2001), and there is no significant likelihood that he will be removed in the reasonably foreseeable future. In continuing to detain him indefinitely, Respondents have violated the Immigration and Nationality Act, and Petitioner's Fifth Amendment right to substantive and procedural Due Process. See Zadvydas, 533 U.S. at 690; Clark v. Martinez, 543 U.S. 371, 377 (2005); Nadarajah v. Gonzales, 443 F.3d 1069, 1079 (9th Cir. 2006); Tijani v. Willis, 430 F.3d 1241, 242 (9th Cir. 2005); see also 8 U.S.C. § 1231(a), INA § 241(a); 8 U.S.C. § 1226, INA § 236. Intervention by this court is now necessary to obtain Petitioner's release.

**JURISDICTION**

5. This action arises under the United States Constitution, the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. §§ 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 et seq.; Art. I, § 9, Cl. 2 of the United States Constitution ("Suspension Clause"); and the common law. See Zadvydas, 533 U.S. at 687; INS v. St. Cyr, 533 U.S. 289 (2001). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, as Petitioner is presently being held in custody under

color of the authority of the United States, in violation of the Constitution, laws, or treaties of the United States.

6. This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, and the All Writs Act, 28 U.S.C. § 1651.

7. Petitioner has exhausted all administrative remedies to the extent required by law.

## **VENUE**

8. Venue is properly with this Court pursuant to 28 U.S.C. § 1391(e) because the Respondents are employees or officers of the United States, acting in their official capacity, and an agency of the United States; because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California; because Respondent Nancy Alcantar, Field Office Director, San Francisco, who is primarily responsible for holding Petitioner in custody, resides in the Northern District of California; because Petitioner's records, counsel, home and pertinent witnesses are to be found in Northern District of California; because the Immigration Court hearing which resulted in the final order of removal took place in San Francisco in the Northern District of California; because the decision to continue to detain Petitioner beyond six months was made in the San Francisco field office in the Northern District of California; and because there is no real property involved in this action. See also Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-94 (1973) (noting that "traditional venue considerations" for the purposes of a habeas petition under 28 U.S.C. § 2241 include (1) the location where material events took place, where records and pertinent witness are likely to be found, (2) the convenience of the forum for respondent and petitioner; and (3) the familiarity of the court with the applicable laws).

## **INTRADISTRICT ASSIGNMENT**

9. The custody determination proceedings on behalf of Petitioner took place in San Francisco, California. Likewise, the decision to hold Petitioner in custody is under control of the San Francisco office of Respondents. Therefore, assignment to the San Francisco or Oakland Division of this Court is proper under N.D. Rule 3-2(c) and (d).

3

Petition for the Writ of Habeas Corpus                                                                                                   No:_____

**PARTIES**

10. Petitioner Mohammed SHAMIM is a native and citizen of Fiji who has been residing in the United States as a lawful permanent resident since 1980. Petitioner was taken into immigration custody on October 17, 2006, and has remained there ever since. A final order of removal was entered on October 19, 2006 when the Immigration Judge held that Petitioner was removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for committing two crimes of moral turpitude and Petitioner waived his right to appeal. On April 20, 2007, Immigration and Customs Enforcement ("ICE") denied Petitioner's request for release from detention, and stated that Petitioner's detention would not be reviewed again for a year.

11. Respondent Michael CHERTOFF is sued in his official capacity as the Secretary of the Department of Homeland Security. In that capacity, he has responsibility for the administration and enforcement of the immigration laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. 296, 116 Stat. 2135 (Nov. 25, 2002), and therefore has custodial authority over Petitioner.

12. Respondent Alberto GONZALES is sued in his official capacity as the Attorney General of the United States and as the head of the United States Department of Justice. In that capacity, he has the ultimate authority over the immigration court system and the Board of Immigration Appeals. 8 U.S.C. § 1103.

13. Respondent Julie MYERS is sued in her official capacity of Assistant Secretary of Homeland Security of the United States Bureau of Immigration and Customs Enforcement ("ICE"). In that capacity, she is responsible for the investigation and detention of aliens who may be subject to removal. She therefore has custodial power over Petitioner.

14. Respondent Nancy ALCANTAR is sued in her official capacity as the Field Office Director of the United States Bureau of Immigration and Customs Enforcement ("ICE") in San Francisco, California. In that capacity, she is responsible for the initiation of removal proceedings and the execution of removal orders for non-citizens within the jurisdiction of the San Francisco field ICE Field Office. She also has the authority to determine whether individual

aliens who are subject to final removal orders should be detained in immigration custody or released. She therefore has custodial authority over Petitioner.

15. Respondent Earl BARNES is sued in his official capacity as the Facility Manager of the Lerdo Pre-Trial Detention Facility in Bakersfield, California, where Petitioner is presently being held in immigration detention. He therefore has custodial authority over Petitioner.

## FACTUAL BACKGROUND

16. Petitioner is a native and citizen of Fiji, who has been residing in the United States as a lawful permanent resident since 1980. Petitioner first entered the United States at the age of 14 on November 30, 1980. His entire immediate family lives in the United States, and are either United States citizens or lawful permanent residents. He has no family remaining in Fiji.

17. Petitioner was taken into custody on October 17, 2006, and ordered removed by the Immigration Judge on October 19, 2006 under 8 U.S.C. § 1227(a)(2)(A)(ii) for committing two crimes of moral turpitude. At his hearing, Petitioner chose to represent himself, conceded removal, waived relief even though the Immigration Judge informed him that he was eligible for a waiver of removal under 8 U.S.C. § 1229b(a) (cancellation of removal for lawful permanent residents), and waived appeal. See Declaration of Zachary Nightingale ("Nightingale Dec.") at Exhibit ("Exh.") A.

18. After he was ordered removed, Petitioner's family became aware of his immigration proceedings, and obtained counsel for Petitioner. Petitioner subsequently filed two motions to reopen.

19. The first motion to reopen, filed by prior counsel on November 17, 2006, showed that Petitioner's waiver of his right to appeal was not intelligent or voluntary because he was misadvised regarding his removability by the Immigration Judge. The Immigration Judge erred in finding that the convictions charged by the DHS constituted crimes involving moral turpitude under Ninth Circuit law. The Immigration Judge also erred in finding, based on new charges introduced by the DHS in opposition to Petitioner's motion to reopen, that Petitioner is removable for an aggravated felony and was therefore ineligible for relief from removal.

20. Petitioner's first custody review, scheduled for January 16, 2007, was cancelled by the Service. See Nightingale Dec. at Exh. B.

21. The second motion to reopen, filed by undersigned counsel on April 13, 2007, showed that Petitioner's waiver is also invalid because Petitioner suffers from a delusional disorder that has severely impaired his ability to reason clearly, and engendered his irrational behavior during his immigration court hearing. His first prior counsel failed to investigate this issue, and thus it remained unidentified until a psychological evaluation was obtained by undersigned counsel. These fundamental due process errors prejudiced Petitioner by leading him to concede removal, waive relief, and waive appeal, even though he was arguably not removable and clearly eligible for relief.

22. On March 1, 2007, the BIA denied Petitioner's first motion to reopen, and on May 25, 2007, the BIA denied Petitioner's second motion to reopen. Petitioner appealed both decisions to the Ninth Circuit Court of Appeals. The appeals have been consolidated and are currently pending. See Shamim v. Gonzales, Case Nos. 07-70895 & 07-72351.

23. Petitioner's second custody review was scheduled for April 20, 2006. Prior to the review, Petitioner was invited to submit, and did submit to ICE, documentation showing that he was neither a flight-risk nor a danger to the community. His review was held on or about April 20, 2006. Following the review, the DHS denied his application for release on the sole ground that he had a petition for review pending before the Ninth Circuit and consequently a stay of removal in effect. It also stated that it would not review his custody for another one year or until the Ninth Circuit Court had made a decision in his case. See Nightingale Dec. at Exh. C.

24. Petitioner's continued detention has caused – and continues to cause – immediate and irreparable harm, both to himself and to his family. Petitioner's mental health is deteriorating, and he is unable to eat or sleep properly.

**STATUTORY AND REGULATORY FRAMEWORK**

25. There is no statutory authority that authorizes Petitioner's continued detention.

26. Statutory provisions 8 U.S.C. § 1226 and § 1226a govern the detention of aliens who are currently in removal proceedings without a final order of removal. See 8 U.S.C. § 1226

("Apprehension and detention of aliens"), § 1226a ("Mandatory detention of suspected terrorists"). See also 8 C.F.R. § 236, § 1236. Given that Petitioner has a final order of removal, these provisions do not apply to his case.

27. Section 8 U.S.C. § 1231(a) governs the detention, release, and removal of aliens who have been ordered removed. Specifically, 8 U.S.C. § 1231(a)(2), which was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), amended the Immigration and Nationality Act to require that certain aliens who have been ordered removed must be detained during a 90-day removal period.

28. The removal period begins on the latest of three possible dates, depending on the posture of the alien's case. See 8 U.S.C. § 1231(a)(1)(B) (2007).

29. 8 U.S.C. § 1231(a)(3) provides for release from detention after the 90-day removal period, subject to an order of supervision. Specifically, the statute provides as follows:

> Supervision after 90-day period. – If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—
>
> (A) to appear before an immigration officer periodically for identification;
>
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
>
> (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
>
> D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(3) (2007).

30. Section 8 U.S.C. § 1231(a)(6) allows the Attorney General to continue to detain certain individuals beyond the 90-day removal period in limited circumstances. Specifically, the statute provides as follows:

> Inadmissible or criminal aliens. – An alien ordered removed who is inadmissible under section 212 [8 U.S.C. § 1182], removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) [8 U.S.C. §§1227(a)(1)(C), (a)(2), or (a)(4)] or who has

7

> been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6) (2007). See also 8 C.F.R. § 241.4(d)(1); § 1241 et seq.

29. The Supreme Court has held that although 8 U.S.C. § 1231(a)(6) authorizes the Attorney General to detain certain aliens beyond the 90-day removal period, it does not authorize detention beyond a presumptively reasonable six month period where there is no significant likelihood of removal in the reasonably foreseeable future. In Zadvydas, the Court held that the continued detention of a noncitizen, who had been issued a final order of removal, beyond a period of six months was presumptively unconstitutional. 533 U.S. at 701. It stated therefore that, "[a]fter this six-month period, once the alien provides good reason to believe that that there is no significant likelihood of removal in the near future, the Government must respond with evidence sufficient to rebut that showing." Id. If the government cannot make such a showing, "the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances…." Id. at 699-700 (emphasis added). See also Clark v. Martinez, 543 U.S. 371, 377(2005) (holding that Zadvydas applied to all categories of aliens whose detention was unauthorized by 8 U.S.C. § 1231(a)(6)).

30. The presumptive six month rule of Zadvydas and Clark has not been limited to those with a final order of removal or to those aliens who lack a stay of removal. Rather, the focus of each case has been on whether a petitioner's removal is reasonably foreseeable after his detention period has passed the six month period of presumptive reasonableness. In Nadarajah, the Ninth Circuit Court considered whether the government could lawfully detain a petitioner pursuant to the general immigration detention statutes at 8 U.S.C. § 1225 while the government appealed his grant of asylum to the Attorney General. 443 F.3d at 1075. In that case, the petitioner was taken into immigration custody when he arrived in the United States and requested asylum, and, by the time of the Ninth Circuit's decision, had been in custody for almost five years. Id. at 1073. In evaluating his detention, the Ninth Circuit found that the principles of Zadvydas and Clark

applied equally to petitioners detained under 8 U.S.C. § 1225?, and therefore analyzed whether the petitioner's removal was reasonably foreseeable. Id. at 1078-80. It concluded that its removal was not reasonably foreseeable because "[t]he BIA did not provide for Nadarajah's release from detention, where he remains without any established timeline for a decision on when he may be released from detention." Id. at 1079. Similarly, in Tijani v. Willis, the Ninth Circuit held that even that the mandatory custody provisions at 8 U.S.C. § 1226(c) were subject to the limits of Zadvydas. See 430 F.3d at 242 (finding that the petitioner's continued detention, while his case was pending before the Ninth Circuit Court, was not lawful because the "foreseeable process in [the Court of Appeals] …is a year or more" and therefore ordered a hearing on his detention before an Immigration Judge).

31. Likewise, in this case, Petitioner's continued detention, which has surpassed the 90 day removal period and the six month period of presumptive lawfulness, is unlawful because his removal is not reasonably foreseeable.

## CONSTITUTIONAL FRAMEWORK

32. All aliens who are present in the United States, regardless of their immigration status, are entitled to due process of law under the Fifth Amendment of the U.S. Constitution. See id. at 693 ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (citations omitted); Plyer v. Doe, 457 U.S. 202, 210 (1987) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.").

33. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be… deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). The Due Process Clause thus contains both a substantive right to be free of unlawful bodily restraint, as well as a procedural right to be heard in a meaningful time and meaningful

manner before being deprived of such liberty. See Matthews v. Eldridge, 424 U.S. 319, 333 (1976).

## CAUSES OF ACTION

### COUNT ONE

### (VIOLATION OF IMMIGRATION AND NATIONALITY ACT)

34. The allegations contained in paragraphs 1 through 33 above are repeated and realleged as though fully set forth herein.

35. Petitioner has already been detained by Respondents beyond the presumptively reasonable six month period, as established by Zadvydas, supra, Clark, supra, Nadarajah, supra, and Tijani, supra. In this case, Petitioner's removal period began on the date that his removal order became administratively final, which was on October 19, 2006, the date that the Immigration Judge issued his order of removal and Petitioner waived appeal. See 8 U.S.C. § 1231(a)(1)(B)(i). It has now been well over six months since October 19, 2006 and Petitioner remains detained.

36. This detention is unlawful under the Immigration and Nationality Act because there is no significant likelihood that Petitioner will be removed from the United States in the reasonably foreseeable future. See 8 U.S.C. § 1231(a)(6). He has two petitions for review pending at the Ninth Circuit and a temporary stay of removal in effect. See Ninth Circuit General Order 6.4(c)(6); De Leon v. INS, 115 F.3d 643 (9th Cir. 1997). The stay will thus be in effect for many months, and Respondents themselves acknowledged that they would not perform another custody review for an entire year. Moreover, if either of Petitioner's petitions for review is granted, he will then be eligible for a new hearing before the Immigration Judge. The new hearing would involve reconsideration of whether Petitioner is in fact removable or, if he is removable, whether he warrants relief in the exercise of discretion. He would also have an automatic stay of removal during the extended period for his Immigration Court hearings. Thus, like the petitioner in Zadvydas, Petitioner has a final order of removal but may not be removed from the United States in the foreseeable future. See Zadvydas, 533 U.S. at 702 (holding that the

government's requirement that "an alien seeking release show the absence of <u>any</u> prospect of removal …demands more than our reading of the statute can bear.") (emphasis in original).

37. Respondents' apparent belief that Petitioner may be detained beyond six months, with no removal reasonably foreseeable is unlawful and unreasonable. Respondents ignore the single factor that should be considered: namely that Petitioner's removal is not reasonably foreseeable after his over six months of detention. It appears that the continued detention of Petitioner by Respondent is punitive. Here, like the petitioners in <u>Nadarajah</u> and <u>Tijani</u>, Petitioner's removal is not reasonably foreseeable. The extended and unknown length of time that adjudication of his appeal may take before the Ninth Circuit, as well as any additional time for new immigration proceedings if the Court were to grant one or both of his petitions, renders his removal unforeseeable and his continued detention unreasonable. Petitioner will remain detained indefinitely absent intervention by this Court because Respondents have effectively (and unlawfully) determined that Petitioner will not be released for the duration of his Ninth Circuit appeal, quite possibly lasting over a year in addition to the already passed six months.

38. Thus, Respondents have violated 8 U.S.C. § 1231(a)(6) in continuing to detain Petitioner under these circumstances.

## COUNT TWO

## (FIFTH AMENDMENT DUE PROCESS)

39. The allegations contained in paragraphs 1 through 33 above are repeated and realleged as though fully set forth herein.

40. All persons residing in the United States are protected by the Due Process Clause of the Fifth Amendment which provides for, <u>inter alia</u>, freedom from bodily restraint.

41. Respondent's continued – and indefinite – detention of Petitioner violates his right to substantive due process by depriving him of this fundamental liberty interest. The Due Process Clause of the Fifth Amendment requires that any deprivation of liberty be narrowly tailored to serve a compelling government interest. Although Respondents clearly have an interest in effectuating Petitioner's removal, his detention beyond the presumptively reasonable six month period established by <u>Zadvydas</u>, <u>supra</u>, and as applied by <u>Clark</u>, <u>supra</u>, <u>Nadarajah</u>, <u>supra</u>, and

Tijani, supra, no longer serves that interest where, as here, there is no significant likelihood that he will be removed in the reasonably foreseeable future. Thus, he is currently being indefinitely detained in violation of his right to substantive due process.

## COUNT THREE
## (FIFTH AMENDMENT PROCEDURAL DUE PROCESS)

42. The allegations contained in paragraphs 1 through 33 above are repeated and realleged as though fully set forth herein.

43. The procedural Due Process requirement of the Fifth Amendment entitles a person to be heard at a meaningful time and in a meaningful manner regarding a deprivation of liberty. The process that is due depends upon the private interest affected by the official action, the risk of erroneous deprivation of the interest, the value (if any) of additional or substitute procedural safeguards, and the government's interest, including fiscal and administrative burdens that additional or substitute procedural requirements would impose. Matthews v. Eldridge, 424 U.S. 319, 333 (1976). The review process in Petitioner's case has effectively denied him any meaningful review of his custody status.

44. Here, the private interest affected by Respondents' actions is of the highest importance, namely, a fundamental liberty interest in being free from physical restraint. Procedural due process requires a meaningful custody hearing before an independent and impartial adjudicator. By failing to review Petitioner's detention on the factors determined relevant by the Court: namely the reasonable likelihood that removal would be imminent, and by failing to grant him another review within a reasonable time, Petitioner has been denied the opportunity for a fair hearing to demonstrate that his detention is unlawful under 8 U.S.C. § 1231(a)(6). Further, Petitioner submitted significant documentation to Respondents, documenting that he is neither a flight-risk nor a danger to the community. This documentation was also ignored by DHS, which issued its decision to continue his detention on a completely irrelevant factor – namely his pending appeal at the Ninth Circuit. In addition, the decision to continue to detain Petitioner has been made by Respondents, who are certainly not the independent and impartial adjudicators that the Fifth Amendment requires. There is no administrative procedure in place that requires Respondents to make a decision on Petitioner's detention in any reasonable amount of time, or to

ensure that Respondents' actions are in compliance with the Supreme Court's mandate in *Zadvydas*, *supra*. Thus, Respondents' failure to provide Petitioner with a meaningful opportunity to challenge his detention before independent and impartial adjudicators violates his right to procedural due process under the Fifth Amendment.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner prays that this Court grant the following relief:

(1) issue an Order granting Petitioner's Petition for Writ of Habeas Corpus and directing Respondents to immediately release Petitioner from custody;

(2) award Petitioner his reasonable costs and fees; and

(3) grant any other and further relief that this Court may deem fit and proper.

Dated: August 21, 2007

Zachary Nightingale
Marc Van Der Hout
Avantika Shastri
VAN DER HOUT, BRIGAGLIANO
& NIGHTINGALE, LLP
180 Sutter St., Fifth Floor
San Francisco, CA 94104
Telephone: (415) 981-3000
Facsimile: (415) 981-3003

By: _____
Zachary Nightingale
Attorney for Petitioner